IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN A. MOYER AND MARIA D. | : | CIVIL ACTION |
| MOYER, H/W AND ALL OTHER | : | |
| PERSONS SIMILARLY SITUATED, | : | NO.  09-cv- |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | CLASS ACTION |
| HSBC, USA., INC. | : | |
| 452 Fifth Avenue | : | 15 U.S.C. § 1692a, *Et Seq.* |
| New York, NY 10018, and | : | |
| | : | 18 U.S.C. § 152 |
| HSBC MORTGAGE SERVICES | : | 18 U.S.C. § 157 |
| 636 Grand Regency Boulevard | : | |
| Brandon, Florida 33510, and | : | |
| | : | |
| MOSS CODILIS, LLP | : | |
| 6560 Greenwood Plaza Blvd. | : | |
| Suite 100 | : | |
| Englewood, Colorado 80111, | : | |
| | : | |
| Defendants | : | |

## CLASS ACTION COMPLAINT IN CIVIL ACTION

### I.    INTRODUCTION

1.    Plaintiffs bring this class action on behalf of themselves and a nationwide class of similarly situated individuals (the "Class") as described in Section VI, below.

2.    Defendants have uniformly engaged in a scheme of illegal, unfair, unlawful, and deceptive business practices that violate contract, and state and federal law in the servicing of residence-secured loan transactions and in the provision of certain related services.

### A.    Force Placed Insurance

3.    Defendant, HSBC USA, INC., by itself and its wholly owned subsidiary, HSBC Mortgages Services, Inc. (collectively referred to as "HSBC") have uniformly engaged in a

1

scheme of intentionally placing forced-placed insurance upon the residences of mortgagors in situations in which the mortgagors have complied with the contractual provisions requiring them to have their own-placed homeowners' insurance on their respective residences.

4.      This scheme is carried out by means of centrally controlled sets of policies and practices in which defendants are engaged, and is implemented uniformly across the nation.

5.      HSBC routinely assigns forced placed insurance upon the residences of mortgagors when the mortgagors have their own homeowners' insurance, and charges the homeowners therefor.

6.      Such charges are not permitted under contract, state or federal law.

7.      These charges are hereinafter referred to herein as the "improper charges", or the like.

8.      In the case of the named Plaintiffs, these improper charges have been assessed, charged, and have been and continue to be the subject of collection attempts by the defendants, HSBC and Moss Codilis, LLP ("Moss") upon the account of or against Plaintiffs and the members of the Class.

9.      In addition thereto, the payment of regular mortgage payments by the mortgagors – members of the class – are often accepted by HSBC as partial payment because of the failure of the mortgagor(s) to include in the regular payments the additional and improper charges imposed by the HSBC for forced placed insurance.

10.     As such, the "partial payments" then result in additional charges, such as late fees, and the like.

11.     As such, these "partial payments" result in inaccurate reporting by HSBC to the applicable credit reporting agencies.

12     HSBC assesses these improper charges to the accounts of mortgagors/borrowers whose accounts were/are being serviced by HSBC, or its predecessors in interest, all pursuant to contracts between HSBC and residential mortgagors in the form of generic form documentation in standard use with mortgage obligations.

13.     Moss is in the business of supporting the collection activities of HSBC, at least while members of the Class are in bankruptcy, attempting to collect these improper sums.

14.     Plaintiff alleges that these practices, in addition to breaching the contractual obligations of HSBC as manifested by the mortgage obligations (comprised of a "note" and a "Mortgage") are misleading, deceptive, and unfair under state law including, without limitation, 73 P.S. § 201-1, *et seq.*(for which a class is not sought), and 73 P.S. § 2270.4, *et seq.* (for which a class is not sought).

15.     These practices constitute breaches of contract, for which a class is sought against HSBC.

16.     These practices constitute violations of the federal "Fair Debt Collection Practices Act" (15 U.S.C. § 1692a), *et seq.,* and bankruptcy fraud (18 U.S.C. §§ 152 and 157), for each of which a class is sought.

**B.**     **Violation of Court Orders Disallowing Claims of Defendant**

17.     Defendants continue to attempt to collect, or collect, from Plaintiffs and members of this class, sums represented by claims that have been disallowed by the Court.

18.     Plaintiffs allege that these practices, in addition to breaching the contractual obligations by HSBC, as manifested by the mortgage, are misleading, deceptive, and unfair under state law including, without limitation, 73 P.S. § 201-1, *et seq.*, and 73 P.S. § 2270.4, *et seq.* (for which a class is not sought).

19.     These practices constitute breaches of contract.

20.     These practices constitute violations of the federal "Fair Debt Collection Practices Act" and represent receipts that unjustly enrich defendants.

21.     These practices violate the United States Bankruptcy Code, and the lawful orders of the United States Bankruptcy Court for the Eastern District of Pennsylvania.

**C.      Relief Sought**

22.     Plaintiffs seek a nationwide class designation for the following Class and its Sub-Classes:

a.      Sub-Class I:   On a nationwide basis, all mortgagors of HSBC who had homeowners' purchased insurance coverage in force and for which HSBC nonetheless purchased and imposed force placed insurance thereon and for which HSBC charged the mortgagors therefor, and/or for which Moss attempted to collect therefor, for and on behalf of HSBC.

b.      Sub-Class II:   On a nationwide basis, all mortgagors of HSBC who, while the mortgagors were under the protection of the United States Bankruptcy Code, were the subject of filings by HSBC and/or Moss, the latter for and on behalf of HSBC, with the Bankruptcy Court in violation of 18 U.S.C. §§ 152 and 157(2)(3),including, but not limited to, false proofs of claims as they relate to charges for force placed insurance to which HSBC had no entitlement.

c.      Sub-Class III: On a district-wide basis, all mortgagors of HSBC who were or are the subject of attempts to collect sums of money, whether by filing proofs of claim therefor, or otherwise, in violation of the Orders of the United States Bankruptcy Court for the Eastern District of Pennsylvania barring such claims.

23.     Plaintiffs seek injunctive relief to prevent recurrence of the challenged conduct, and to assure uniform standards of future servicing of loans and equitable relief and damages for

4

themselves and the Class generally, including restitution and disgorgement of funds obtained by the defendants in violation of law.

24.     Reference in this Complaint to HSBC is intended to include, but not be limited to, its respective duly authorized agents, attorneys, representatives, employees, assignors, transferors, predecessors in interest, its principals, sub-servicers, trust beneficiaries, or such other persons affiliated with HSBC in its respective activities as a mortgage servicer affecting Plaintiffs.

25.     Reference in this Complaint to Moss is intended to include, but not be limited to, its respective duly authorized agents, attorneys, representatives, employees, assignors, transferors, predecessors in interest, its principals, sub-servicers, trust beneficiaries, or such other persons affiliated with Moss in its respective activities as a mortgage servicer affecting Plaintiffs.

## II.     JURISDICTION AND VENUE

26.     This Court has jurisdiction over Plaintiffs' claims as the causes of action set forth hereunder involve assertions of the violation of generic mortgage contracts on a national scale.

27.     This Court has jurisdiction over Plaintiffs' claims as the causes of action set forth hereunder involve assert violations of 15 U.S.C. § 1692a., *et seq.,* and, specifically, 15 U.S.C. § 1692k.

28.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. 1322(d), for the following reasons:

    a.     It is believed and therefore averred that the amount in controversy exceeds $5,000,000;

    b.     Defendants are citizens of the State other than Pennsylvania.

c.   It is believed that less than one-third of the members of the putative class are citizens of the Commonwealth of Pennsylvania.

d.   Finally, after reasonable investigation, plaintiffs are unaware of any similar class actions of which defendants have been involved within the past three (3) years as they relate to force placed insurance and violation of lawful orders of court.

## III.   THE PARTIES

29.   Plaintiffs, Stephen and Maria Moyer ("Moyers" or "Plaintiffs"), continue to reside in Pennsylvania at 1634 Boone Way, Lansdale, PA 19446, the property that is the subject of this action.

30.   HSBC USA, Inc. is a Maryland Corporation with its principal offices located at 452 Fifth Avenue, New York, New York; HSBC Mortgage Services is a Delaware Corporation with its principal place of business at the address as set forth in the caption hereto.  HSBC has offices over the entire United States including Pennsylvania.

31.   Moss Codilis, LLP is a Colorado corporation (Limited Liability Partnership) with its corporate and principal place of business as set forth in the caption hereto.

32.   Moss is believed to practice law in every state, or, at minimum, acting as a "debt collector" for HSBC, and providing various bankruptcy services for mortgage companies as HSBC, such as filing proofs of claim therefor, which are documents filed with the Bankruptcy Courts in attempts to collect money.

33.   At all times relevant, HSBC is a "debt collector" as that term is defined by 15 U.S.C. 1692a(6)(F)(iii).

## IV.   SUMMARY STATEMENT OF THE CASE

### A.   Force Placed Insurance[1],[2]

35.     The case arises from a scheme involving the purchase by HSBC of force placed hazard insurance ostensibly to protect its secured interest in real estate.

36.     Standard mortgage instruments provide, *inter alia*, that the mortgagee can do that which is "reasonable" and/or "necessary" to protect the value of the property and the mortgagee's interest therein.  HSBC invokes this type of provision to procure insurance policies at costs far in excess of reasonable market rates, at premiums up to five to ten times the premiums for the existing or former policies in force for the same properties.  In this case, the force placed premium charged to Plaintiffs is 2.31 times the comprehensive homeowners' purchased coverage.

37.     Upon information and belief, the force placed policies often contain coverage, in addition to hazard and mortgage insurance, which is not "necessary" and/or "reasonable as defined or implied by the mortgage instrument and which HSBC is therefore not authorized to purchase under the mortgage instrument.

38.     HSBC places the insurance at excessive levels even though it knows from its familiarity with insurance markets that suitable policies are available at significantly lower costs, and even though it is familiar with the former or existing policies covering the mortgaged

---

[1] . "Force Placed" insurance is hazard insurance purchased by a mortgagee(s) or servicer(s) of a mortgage(s) to protect the mortgagee(s)' interest in the premises which are the subject of a mortgage(s).

[2] There are three classes sought for force placed insurance:  1.  A class wronged by the purchase of force placed coverage when the members of the class were already insured with the class members' own purchase, and for which the charges were excessive and unreasonable.

properties, including, *inter alia*, the applicable premiums and the identity of the insurer and procuring broker or agency.

39.     Upon information and belief, in return for placing these inflated policies, it is believed that HSBC obtains commissions, and, because of the inflated premiums, at far higher levels than are obtained for non-forced placed hazard insurance.  There are no disclosures of these commissions to the consumers.

40.     Upon information and belief, HSBC also receives other consideration, "special favor or advantage" in the form of services from the insurers and their agents which services are funded out of the proceeds of the forced placed policies.  The costs of these services are borne entirely by those within the Class who are charged the dramatically inflated premiums.  These services include, but are not limited to:

      a.     Oversight by the insurer – underwriter – of all homeowners' insurance for all of the mortgagees being serviced by HSBC;

      b.      At little or no cost to HSBC;

      c.     In consideration for the higher premiums paid to the insurer (and as charged to the mortgagors for whose properties force placed insurance is imposed).

41.     The excessive premiums result in dramatic increases to the mortgagors' overall monthly mortgage payments.

42.     HSBC conducts these activities pursuant to corporate-wide policies utilizing standardized computer generated correspondence.

43.     Thus, Plaintiffs, on behalf of themselves, and all others similarly situated, seek to put an end to this oppressive and unconscionable commercial practice of imposing force placed insurance at unreasonable and excessive rates, and the commercial practice of imposing force

8

placed insurance on mortgagors who have homeowner-purchased insurance. To accomplish this objective, Plaintiffs have come to this Court seeking compensatory, as well as punitive, damages and equitable relief.

44.     Furthermore, HSBC places force placed insurance (homeowner's insurance, but not homeowner-purchased) on the residences of certain of the mortgagors whose mortgages are serviced by HSBC when, in fact, HSBC has been notified by the mortgagor and/or the mortgagor's own homeowner's insurance carrier or agent that the residence is insured.

45.     Nonetheless, HSBC continues to force place coverage because it profits thereby, because:

a.     It receives services appertaining to the entire portfolio of homeowners from the force placed carrier, with the latter charging the force placed mortgagors therefor;

b.     It is believed that HSBC, by itself, an agency owned by HSBC, or more indirectly, receives commissions on the premiums charged for the force placed coverage.

46.     The force placed coverage is generically and universally exceedingly more expensive than homeowner-purchased coverage with substantially reduced coverage than homeowner-purchased insurance.

47.     The force placed coverage typically only insures the physical structure of the residence, while charging much more in premiums than homeowner's purchased policies that provide coverage for the physical structure, loss of use, contents, liability, *et cetera.*

48.     Plaintiffs, the Moyers, have purchased their own homeowner's insurance since or before they filed for protection under and pursuant to 11 U.S.C. Chapter 13, on December 14, 2007.

49.     In any event, HSBC purchased force placed coverage on the Moyers' residence, and charged $3,686.00 as an annual premium therefor.

50.     The force placed coverage is believed to have been for the physical residence, only.

51.     In fact, and at all times relevant, Moyers have been insured with Harleysville Mutual Insurance Company, and as follows:  Basic Coverage for dwelling, other structures, personal property, loss of use, personal liability and medical payments.

52.     At all times relevant, HSBC was notified of the homeowner's purchased coverage.

53.     At all times relevant, HSBC has ignored and continued to charge Moyers for the force placed insurance, and, furthermore, has repetitively filed proofs of claim with the bankruptcy court claiming its entitlement to the amount of the force placed coverage, and has set forth the same improper charge on monthly statements .

54.     HSBC has conducted such improper activity and imposed such improper charges upon a class of persons on a nationwide basis.

**B.     Violation of Court Orders Disallowing Claims of Defendant**

55.     On June 10, 2009, the United States Bankruptcy Court rejected HSBC's claim for the force placed coverage, and denied its proof of claim (HSBC claiming it is entitled to the force placed insurance premium of $3686.00), in its entirety.

56.     Regardless, HSBC employed the services of Moss to collect this sum that has been disallowed.

57.     HSBC and Moss have made continuing attempts to collect these charges that are neither permitted by contract or law.

58.     These acts by defendants have violated and continue to violate the generic mortgage contract provisions pertaining to insurance coverage.  The charges for force placed insurance are inherently unreasonable and wrong *per se*.  These violations adversely have affected and affect a nationwide class of mortgagors.

59.     These acts by defendants have violated and continue to violate Pennsylvania's Consumer Protection Statutes.

60.     These acts by defendants constitute breach of contract.

61.     These acts by defendants have violated and continue to violate the Bankruptcy Code and the lawful orders of the bankruptcy court.

62.     These acts by defendants have violated and continue to violate 15 U.S.C. 1692a, *et seq.,* the federal Fair Debt Collection Practices Act.

## V.     CLASS ACTION ALLEGATIONS

63.     This case is properly maintainable as a nationwide Class action, but for the Class limited to the Eastern District of Pennsylvania, pursuant to and in accordance with Federal Rule of Civil Procedure ("F.R.C.P."), Rule 23(a), and 28 U.S.C. 1332(d), *inter alia*:

(1)     On belief, the Class is so numerous that joinder of all members is impractical.  Although the size of the Class is not specifically known, the number of Class membership is substantial, believed numbering at least in the thousands, but for the Class restricted to the Eastern District of Pennsylvania, which is believed to number in the hundreds.

(2)     There are substantial questions of law and fact common to the Class.

(3)     The claims of the representative Plaintiffs are typical of the claims of the members of the Class.

(4)     The representative Plaintiffs will fairly and adequately protect the interests of the Class under the criteria set forth in F.R.C.P. 23.

(5)     A class action under the circumstances discussed herein provides the most fair and efficient method for adjudication of the controversy under the criteria set forth in F.R.C.P. 23.

64.     This case is properly maintainable as a Class action pursuant to and in accordance with F.R.C.P. 23(b)(3).

a.     The issues of fact common to the members of the Class, as required by Local Rule of Civil Procedure ("Local Rule") for the Eastern District of Pennsylvania, complies with F.R.C.P. 23.1(b)(2)(D).

b.     The questions of law common to the members of the Class, comply with the requirements set forth by Local Rule 23.1(b)(2)D).

c.     The questions of law and the questions of fact predominate for the Class over any questions of law and/or fact affecting only individual members of the Class.

d.     A Class action is superior to any other action for the fair and efficient adjudication of the controversy as the commonality of factual and legal questions for the Class are overwhelmingly predominant.

e.     As the questions of law and of fact are common to the members of the Class, and considering the prospective individual damages at issue, the interests of the members of the Class will best be controlled and served by this action.

f.     There is no reason why the litigation should not proceed in this particular forum.

g.      There are no unusual difficulties foreseen to be encountered in the management of this Class action.

h.      Plaintiffs are not aware of any similar actions involving similar issues with the same defendants having been filed in the United States District Court for the Eastern District of Pennsylvania, or in any Court.

i.      The claims by Plaintiffs, themselves, and for and on behalf of the members of the Class, are justified as a Class action for the reason that, although the size of the Class is not specifically known, the number of Class members is substantial, believed numbering at least in the thousands on a nationwide basis.

65.     A Class action is superior to any other action for the fair and efficient adjudication of the controversy as the commonality of factual and legal questions for the Class is overwhelmingly predominant.

66.     As the questions of law and of fact are common to the members of the Class, and, considering the prospective individual damages at issue, the interests of the members of the Class will best be controlled and served by this action.

67.     The claims by Plaintiffs, for themselves and for and on behalf of the members of the Class, are justified as a Class action for the reason that the causes of action for the Plaintiffs are the same causes of action for all of the members of the Class derived from the following issues:

a.      Whether HSBC wrongfully charged for force placed insurance;

b.      Whether HSBC wrongfully imposed force placed insurance;

c.      Whether HSBC charged excessive and unreasonable charges for force placed insurance;

13

d.      Whether HSBC and Moss violated state and federal law in attempting to collect, or did collect, sums for which the attempt to collect and/or the collection were not authorized by law or contract;

e.      Whether HSBC violated the terms of the contract by imposing force placed insurance;

f.      Whether HSBC and Moss have violated 18 U.S.C. §§ 152 and 157;

g.      Whether Plaintiffs and the members of the Class incurred damages as a result of these breaches and violations and are defendants liable therefor;

h.      Whether, in the limited Class, to wit:  The Eastern District of Pennsylvania, defendants violated Orders of the Court in their continuing imposition of force placed insurance and charging therefor, and attempting to collect therefor;

i.      Whether Plaintiffs and the members of the Class are entitled to compensatory damages, injunctive relief, restitution, interest, attorney's fees, punitive damages, and other damages as a result of these improper charges?

## VI.     THE CLASS

68.     The above-named Plaintiffs bring this action on behalf of themselves and all persons who:

1.      Were wrongfully force placed for homeowner's insurance;

2.      Were wrongfully charged for force placed insurance;

3.      Were charged excessive and unreasonable amounts for force placed insurance;

4.      Were subjected to attempts to collect the amounts wrongfully charged for force placed insurance; and

5.      Were subjected to collection of the amounts wrongfully charged for force placed insurance;

69.      Furthermore, the above-named Plaintiffs also bring this action on behalf of themselves and all persons who were or are in bankruptcy in which defendants filed documents with the respective bankruptcy courts that falsely claimed, asserted, and/or declared under oath or otherwise that they were entitled to purchase force placed homeowners' insurance and charge therefor.

70.      Finally, the above-named Plaintiffs also bring this action on behalf of themselves and all persons in the Eastern District of Pennsylvania who were the subject of attempts to collect any amounts in violation of the lawful orders of the United States Bankruptcy Court for the Eastern District of Pennsylvania.

## VI.      FACTUAL ALLEGATIONS:  DEFENDANT'S WRONGFUL CONDUCT

69.      Throughout the time relevant hereto, defendants have engaged in a uniform scheme and course of conduct to inflate their respective profits by charging and collecting various fees and costs not authorized by loan documents or applicable law, and specifically related to force placed insurance.

70.      The components of the scheme involve common tactics, including, but not limited to, purchasing and charging for force placed insurance when the homeowners/mortgagors knowingly had their own homeowner's insurance coverage.

71.      Defendants have attempted to collect from members of the Class sums wrongfully charged for force placed insurance.

72. Defendants have attempted to collect from members of the restricted Class – restricted to the Eastern District of Pennsylvania – in violation of the lawful orders of the United States Bankruptcy Court for the Eastern District of Pennsylvania.

## VII.  PLAINTIFFS' FACTUAL STATEMENT

73. At all times relevant, Moyers have been the owners of their residence situate at 1634 Boone Way, Lansdale, PA 19446.

74. On or about October 20, 2006, Moyers executed a mortgage and note in favor of Mortgage Electronic Registration Systems, Inc, as nominee for Decision One Mortgage Company, LLC. The mortgage and note are recorded in the Montgomery County (Pennsylvania) Commissioners' Registry, B 011A U026 L10 1101, dated October 27, 2006, incorporated herein by reference pursuant to *Pennsylvania Rule of Civil Procedure* ("Pa. R.C.P.") 1019.

75. As set forth above, HSBC is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(F)6), for the following reasons:

a. The mortgage closed on 10/26/06; the mortgagee was Mortgage Registration Systems, Inc. as nominee for the mortgagee: Decision One Mortgage Company, LLC ("Decision One");

b. The first payment due thereunder was due December 1, 2006;

c. Moyers made the first payment to Decision One on or about December 7, 2006;

d. The first payment due to be paid to HSBC was due January 1, 2007;

e. The payment due to be paid to HSBC was made on or about January 8, 2007

76.     Therefore, at the time of transfer, Moyers were in default of the obligations required by the Note.

77.     At all times relevant, from and after the date of the execution of the mortgage and note by Moyers to the present time, Moyers have had homeowners' insurance coverage on the said premises.

78.     The homeowners' insurance coverage has been issued by Harleysville Mutual Insurance ("Harleysville") and is currently in force. *See* Exhibit "A"

79.     The current policy issued by Harleysville is "Homeowners Policy Preferred 11" HOA955289, provides coverage as follows:

| | |
|---|---|
| Dwelling | $414,000 |
| Other Structures | $ 41,400 |
| Personal Property | $289,800 |
| Loss of Use | $ 82,800 |
| Personal Liability | $300,000 |
| Medical Payments | $ 5,000 |

80.     The cost to the Moyers for the annual coverage provided by Harleysville for Homeowners' Coverage is currently $1,594, determined as follows:

| | |
|---|---|
| Basic Coverage | $1,335.00 |
| Increased Liability | $ 25.00 |
| Personal Prop. | |
| Replacement Cost | $ 67.00 |
| Replace or Repair | $ 5.00 |
| Loss Surcharge | $ 206.00 |
| | |
| Discounts: | |
| Protective Device Credit | ($ 28.00) |
| Escaped Liquid Fuel Limitation | ($ 16.00) |
| | |
| Total Policy Premium: | $1,594.00 |

81.     At all times preceding the Harleysville current policy of insurance, the cost of the homeowners' coverage was equal to or less than the sum of $1,594.00

82.     On December 14, 2007, Moyers, having incurred first mortgage arrears and property tax arrears, filed a Chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of Pennsylvania, docketed as *In re: Stephen A. Moyer and Maria D. Moyer*, Case Number 07-17358 SR.

83.     On January 8, 2008, HSBC filed its first proof of claim, asserting therein that Moyers owed arrears, none of which were for force placed insurance. *See* the Proof of Claim, attached hereto as Exhibit "B".

84.     Moyers were confirmed on July 16, 2008. *See* the docket entries of the case, incorporated herein by reference as if set forth herein at length.

85.     On December 9, 2008, HSBC filed a "Supplemental" proof of claim seeking an additional sum for $3,686.00, purportedly advanced by HSBC for "Corporate Advance: Hazard Insurance Premium Disbursed 11/17/08". *See* Exhibit "C", attached hereto.

86.     On December 19, 2008, Moyers' counsel received a letter from the trustee asking their intent in light of the fact that an untimely supplemental proof of claim had been filed by HSBC (for the alleged force placed hazard insurance). *See* Exhibits "D".

87.     On December 20, 2008, Moyers' attorney filed an Objection to Proof of Claim based upon the fact that Moyers already had their own insurance and that the force placed coverage was not appropriate.

88.     On February 9, 2009, HSBC filed yet another amended proof of claim NOT requesting reimbursement for force placed insurance. *See* Exhibit "E", mooting Moyers' Objection to Proof of Claim.

89.     By statement dated February 12, 2009, HSBC referenced its payment of $3,686.00 as a corporate advance force placed hazard insurance, effective January 29, 2009. *See* Exhibit "F".

90.     By faxed letter to HSBC dated February 24, 2009, Stephen Moyer notified HSBC that he has insurance coverage, attaching a copy thereto. *See* Exhibit "G".

91.     By telephone on or about February 24, 2009, Carol B. McCullough, Esquire, of McCullough Eisenberg, LLC, spoke with Vanessa at Moss or HSBC reiterating the Moyers' homeowners' coverage.

92.     On April 9, HSBC filed another "Supplemental;" proof of claim asserting that, on March 19, 2009, it had disbursed $3,686.00 for force placed hazard insurance. *See* Exhibit "H".

93.     On May 11, 2009, Moyers, by their attorneys, filed an Objection to the most recently filed "Supplemental" Proof of Claim.

94.     After a hearing, and by Order dated June 10, 2009, the Court denied the "Supplemental" Proof of Claim for $3,686.00 in its entirety. *See* Exhibit "I".

95.     Furthermore, June 10, 2009, HSBC filed a "Praecipe to Withdraw Proof of Claim". *See* the docket entries.

96.     By statement dated June 13, 2009, HSBC asserted its entitlement to $3,686.00 for an escrow advance; furthermore, HSBC increased the monthly payment by $307.17, which is the sum of $3,686.00 divided by 12 (Months). *See* Exhibit "J".

97.     On July 1, 2009, Moyers faxed a letter to HSBC again enclosing a copy of the homeowners insurance, along with a check from Harleysville for reimbursement for property damage. This letter reiterates the homeowners' coverage. *See* Exhibit "K".

98.     By letter dated July 1, 2009, HSBC acknowledges the insurance coverage. *See* Exhibit "L".

99.     By subsequent statements dated July 15, 2009, August 15, 2009, October 15, 2009, HSBC asserts its entitlement to be repaid the sum of $3,686.00 for force placed hazard insurance, with disbursements purportedly made on June 24, 2009, August 13, 2009, and September 28, 2009. *See* Exhibit "M".

100.    On September 29, 2009, a "Supplemental" proof of claim was served upon Moyers by Moss on behalf of HSBC seeking recompense for the alleged advance of $3,686.00.

101.    On December 1, 2009, HSBC served another "Supplemental" Proof of Claim asserting that it had advanced $3,686.00 for force placed hazard insurance, *inter alia,* on August 13, 2009.

102.    Upon receipt of the "Supplemental" Proof of Claim filed December 1, 2009, the Chapter 13 Standing Trustee sent to the Debtors/Plaintiffs requesting advice on how the additional amount shall be paid.

103.    Debtors' counsel responded to the Trustee that the attempt to collect the force placed insurance has already been barred by the Court.

104.    The difference between the charge for the force placed coverage, at $3,686.00, and the Harleysville most recent policy, at $1,594.00, is $2,092.00.

105.    The September 29, 2009 "Supplemental" Proof of Claim was withdrawn by HSBC.

106.    Incredibly, the "Supplemental" Proof of Claim was filed again on November 30, 2009. The only difference between this "Supplemental" Proof of Claim is the addition of escrow sought for taxes purportedly advanced. *See* Exhibit "N".

107.    As a result of the Chapter 13 Trustee again requested advice on how the latest proof of claim will be handled. *See* Exhibit "N".

108.    HSBC has sent to Moyers at least seven (7) setting forth the alleged dates of disbursements by it of the same $3,686.00, as set forth below, setting forth the impression that $25,802.00 has been expended for force placed insurance in the time frame referenced. However, HSBC and Moss have nonetheless only attempted, on belief, to collect the $3,686.00, indicating an alleged one-time disbursement.

109.    The noticed dates of alleged disbursements are as follows:

     a.    November 17, 2008:  *See* Exhibit "C";

     b.    January 29, 2009:    *See* Exhibit "F";

     c.    March 19, 2009:     *See* Exhibit "H";

     d.    July 14, 2009:      *See* Exhibit "M";

     e.    August 13, 2009:    *See* Exhibits "M" and "N";

     f.    September 28, 2009: *See* Exhibit "M"

110.    On belief, the forced placed coverage, at a cost of at least twice as much as the homeowner purchased coverage, is believed to provide coverage as follows:  The physical building, only.

111.    Needless to say, at a cost of less than one-half of the force placed coverage, the homeowner's purchased policy provides a multitude of coverage. *See* paragraph 80, above.

112.    Despite the Order of Court dated June 10, 2009, HSBC and Moss continue to attempt to foist force placed insurance upon plaintiffs.

113.    Despite the Order of Court dated June 10, 2009, HSBC and Moss continue to attempt to collect $3,686.00 for force placed insurance.

114.    Despite the Order of Court dated June 10, 2009, Moss and HSBC continue their attempt to collect a debt that has been barred by law, and is barred by contract.

115.    HSBC and Moss are in violation of the lawful order of the Bankruptcy Court, dated June 10, 2009.

116.    The force placed insurance has been imposed upon Plaintiffs although Plaintiffs have consistently and repetitively proven that they have homeowners' purchased coverage.

117.    The cost of the purported force placed insurance is dramatically unreasonable correlating the cost to the coverage provided and compared with homeowner's purchased insurance.

118.    These charges are illegal, improper, and are not authorized by contract or law.

**COMMON CLASS ELEMENTS**

119.    Plaintiffs and each member of the Class were owners of a residence that is or was collateral for a loan serviced by HSBC.

120.    All members of the Class executed standardized obligations of indebtedness, such as promissory notes and mortgages, or the like, in favor of Defendant, or Defendant's predecessor(s) in interest.

121.    Plaintiffs and each member of the Class were assessed or charged for alleged costs for force placed insurance coverage.

122.    Plaintiffs and each member of the Class, at the time they were assessed or charged for force placed insurance coverage were, in fact, insured by their own homeowners' purchased insurance policies.

123.    Therefore, Plaintiffs and each member of the Class were wrongfully charged for force placed insurance.

124.   Plaintiffs and each member of the Class were subjected to attempts by HSBC and Moss to collect the wrongful charges for force placed insurance, charges that are not authorized by law or contract.

125.   Plaintiffs and each member of Sub-Class II were in bankruptcy and HSBC and/or Moss filed false documents with the Bankruptcy Court claiming HSBC's entitlement to the wrongful and improper charge(s) for force placed insurance.

126.   Plaintiffs and each member of Sub-Class III were in bankruptcy in the Eastern District of Pennsylvania and were charged for force placed insurance after the United States Bankruptcy Court has issued its Order of Court that such charges and the attempts to collect thereon were disallowed.

127.   Plaintiffs and all members of the Class, including but not limited to persons who did NOT have their own, homeowners' purchased insurance coverage, were charged amounts for the force placed insurance coverage that were unreasonable and excessive and, therefore, in violation of contract.

128.   In addition to the breach of contract, the attempt to collect and/or the collection of these illegal fees violates the provisions of 73 P.S. § 201-1, *et seq.,* and 73 P.S. § 2270.4(b) including, but not limited to sub-section (6):

> "A creditor may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph:
> (i) The collection of any amount, including interest, fee, charge or expense incidental to the principal obligation, **unless such amount is expressly authorized by the agreement creating the debt or permitted by law."**
> (Emphasis Supplied.)

129.   These improper charges collected by Defendant clearly unjustly enrich Defendant.

130.    These issues of fact, therefore, for all members of the Class are the same as set forth above, with minor, not substantial, variation.

131.    The questions of law governing the rights of each member of the Class are the same as they relate to Plaintiffs, and involve the all-pervasive issue as to the legality in law and as to contract relating to the imposition of force placed insurance and the collection of charges associated therewith, whether incurred or not incurred.

132.    Defendants engage in a uniform scheme and course of conduct to inflate its corporate profits by routinely imposing, assessing and collecting these improper charges.

133.    Defendants engage s in theses acts and omissions alone and in concert with or through others, including, without limitation, its attorneys, agents, investors, vendors, and other persons and entities.

## COUNT I – BREACH OF CONTRACT
## PLAINTIFFS V. HSBC
## CLASS ACTION

The averments of paragraphs one through and including one hundred and thirty-three, above, are incorporated herein by reference.

134.    Defendant services loans evidenced by standard form notes and mortgages, the relevant provisions of which are uniform.

135.    The parties hereto have contractual privity as all members of the Class executed a mortgage in favor of HSBC, or its predecessors in interest.  A true and correct copy of the Moyers' mortgage is incorporated herein by reference as if set forth herein at length.  *See* paragraph 5, *inter alia,* thereof.  The mortgage is of record with the Montgomery County, Pennsylvania Commissioners' Registry, and is incorporated herein.

136.   The contract permits HSBC to purchase force placed insurance under certain circumstances set forth therein, none of which are applicable to the plaintiffs and members of the Class.

137.   Inherent in the generic mortgage contracts is that any charges imposed or capable of being imposed on the mortgagors must be "reasonable", "justifiable" and "not excessive".

138.   As a part of the standard mortgage, mortgagors are obligated to keep their residences insured with homeowners purchased insurance.

139.   Upon the mortgagors' failure to insure the real property, HSBC has the right to impose force placed insurance coverage on the premises.

140.   However, HSBC is limited to charges that are fair and reasonable, not excessive.

141.   All members of the Class were charged unfair, unreasonable and excessive amounts for the coverage provided.

142.   All members of Sub-Class I were properly insured with their own purchased insurance Homeowners' insurance.

143.   Regardless, all members of Sub-Class I were nonetheless imposed with force placed insurance and were charged therefor, even though, at all times relevant, they had their own adequate homeowners' insurance coverage.

144.   The force placed insurance coverage was unreasonable and excessive in regard to the charges attempted to be collected.

145.   Of course, the force placed insurance coverage was purchased by HSBC when the plaintiffs and the members of the Class were covered by their own insurance.

146.   The imposition of force placed insurance is a violation of the generic contract, and is a violation as to plaintiffs and each Class member.

147.   Furthermore, the unreasonable and excessive charges constitute breach of contract as well.

148.   Accordingly, Defendant has breached its contract with the Plaintiffs and members of the Class.

WHERFORE, Plaintiffs pray this Honorable Court grant appropriate damages, including, but not limited to

A.   Certifying the Class described, and appointing Plaintiffs as representative of the Class, and the undersigned as Class counsel;

B.   Preliminarily and thereafter permanently enjoining HSBC from engaging in the acts described herein;

C.   Requiring that HSBC pay compensatory damages, statutory damages; disgorgement by HSBC of any sums collected, attorney's fees and experts' fees and other litigation expenses; and

D.   Granting such other relief as the Court may deem appropriate.

## COUNT II – FDCPA (15 U.S.C. 1692a, *ET SEQ.*)
## PLAINTIFFS V. DEFENDANTS
## <u>CLASS ACTION</u>

The averments of paragraphs one through and including One hundred and forty-eight (148) above are incorporated herein by reference as if set forth herein at length.

149.   Defendant, HSBC, is a "debt collector" as defined by 15 U.S.C. 1692(a)(6)(F) of the "Fair Debt Collection Practices Act ("FDCPA"). HSBC's debt collection activities utilize the mails and interstate commerce.

150    Defendant, Moss, is a "debt collector" as defined by 15 U.S.C. 1692(a)(6) of the "Fair Debt Collection Practices Act ("FDCPA"). Moss' debt collection activities utilize the mails and interstate commerce.

151.    Plaintiffs and members of the Class are consumers as defined by 15 U.S.C. 1692(a)(3) and 15 U.S.C. 1692(d) of the "Fair Debt Collection Practices Act" ("FDCPA").

152.    Defendant, HSBC, is and has been in violation of FDCPA, §1692d., thereof, in that the imposition of the unlawful and/or improper force placed insurance charges sought to be collected by HSBC were and remain oppressive.

153.    Defendant, Moss, is and has been in violation of FDCPA, §1692d., thereof, in that the imposition of the unlawful and/or improper force placed insurance charges sought to be collected by Moss were and remain oppressive.

154. Defendants, HSBC and Moss, are and have been in violation of FDCPA, §1692e.,  in that defendants have engaged in and conducted activities with respect to the collection of the respective wrongful charges of the respective members of the CLASS by:

        a.      Deceptive representations or means;

        b.      False representations or means;

        c.      Misleading representations or means

155.    Defendants, HSBC and Moss are and have been in violation of FDCPA, §1692f., thereof, in that they have engaged in and conducted activities with respect to the collection of the respective debts of the respective members of the CLASS by:

        a.      Collecting or attempting to collect amounts not expressly authorized by the agreement creating the debt;

        b.      Collecting or attempting to collect amounts not expressly authorized by law;

156.    Defendants, HSBC and Moss, are and have been otherwise in violation of the

FDCPA.

157.    Plaintiffs are entitled to damages pursuant to 15 U.S.C. 1692k., including

a.    Actual damages sustained by each plaintiff as a result of HSBC's failure to

comply with FDCPA;

b.    The lesser of $500,000 or 1 per centum of the net worth of the defendants,

HSBC and Moss, and

c.    Reasonable attorney's fees and costs.

WHERFORE, Plaintiffs pray this Honorable Court grant appropriate damages,

including, but not limited to

A.    Certifying the Class described, and appointing Plaintiffs as representative

of the Class, and the undersigned as Class counsel;

B.    Preliminarily and thereafter permanently enjoining HSBC and Moss from

engaging in the acts described herein;

C.    Requiring that HSBC and Moss pay compensatory damages, statutory

damages; disgorgement by HSBC of any sums collected, attorney's fees and experts' fees and

other litigation expenses; and

D.    Granting such other relief as the Court may deem appropriate.

### COUNT III – FILING FRAUDULENT BANKRUPTCY DOCUMENTS
### (18 U.S.C. §§ 152 and 157)
### PLAINTIFFS V. DEFENDANTS
### CLASS ACTION

The averments of paragraphs One through and including One hundred and Fifty-Seven

(157) are incorporated herein by reference as if set forth herein at length.

158.    This Count III is applicable to those plaintiffs and all members of the Class consisting of persons who filed for protection under and pursuant to 11 U.S.C., the Bankruptcy Code, in which defendant, HSBC and/or Moss, the latter for and on behalf of HSBC, filed documents with the Court asserting the false claim, *inter alia*, for the force placed insurance premium(s), *inter alia*, when plaintiffs and members of the Class had their own purchased insurance which was known to or should have been known to HSBC.

159.    As a direct and proximate result of the wrongful filings with the Bankruptcy Court, by HSBC and/or Moss, members of the Class, such as plaintiffs, were compelled to engage in defending and engaging in other activities by themselves and or by their counsel, to retain and/or invoke protection of the bankruptcy laws in response to the illegal and/or improper activity of defendants derived from its imposition of forced placed hazard insurance and the unconscionable premiums charged therefor, and the wrongful filings in support thereof..

160.    In such cases, defendants asserted claims in the bankruptcy court for charges for force placed insurance for excessive and unreasonable amounts and regardless of the ownership by plaintiffs and members of the Class of their owned purchased homeowners' insurance.

161.    As the cost of the "forced placed" insurance is illegal and improper, misfeasant and malfeasant, and defendants knew, know, or should know or should have known, that pursuing relief in any form in the bankruptcy court for alleged failure of the members of the Class to have their own purchased homeowners' insurance is, itself, fraudulent.

162.    Such filings contained implicit and explicit demands or claims for debts directly and proximately derived from illegal and improper, excessive, oppressive, and unconscionable charges for "forced placed" insurance premiums.

163.    As such, these filings by defendants reflect illegal and/or improper charges, and, therefore, were/are fraudulent.

164.    These filings violate 18 U.S.C. §152 and §157, inter alia.

WHERFORE, Plaintiffs pray this Honorable Court grant appropriate damages, including, but not limited to

A.    Certifying the Class described, and appointing Plaintiffs as representative of the Class, and the undersigned as Class counsel;

B.    Preliminarily and thereafter permanently enjoining HSBC and Moss from engaging in the acts described herein;

C.    Requiring that HSBC and Moss pay compensatory damages, statutory damages; disgorgement by HSBC of any sums collected, attorney's fees and experts' fees and other litigation expenses; and

D.    Granting such other relief as the Court may deem appropriate.

## COUNT IV – UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
## PLAINTIFFS V. DEFENDANTS

The averments of paragraphs One through and including One Hundred and Sixty-five (165) above are incorporated herein by reference as if set forth herein at length.

166.    Plaintiffs are consumer as defined by Pennsylvania's Unfair Trade Practices and Consumer Protection Laws, to wit:  73 P.S. § 201-1, et seq. and 73 P.S. § 2270.1, et seq.

167.    Defendants are "debt collectors" and each and both conduct business in Pennsylvania.

168.    Defendants, HSBC and Moss, the latter for and on behalf of HSBC, have engaged in unfair trade practices, unfair methods of competition, and has practiced other unfair or deceptive

acts or practices directly or indirectly adversely affecting the members of the Class, as described above.

The acts and practices include, but are not limited to:

      a.      Making false or misleading statements of fact, by silence or otherwise;

      b.      Knowingly misrepresenting that such premiums charged were the fair, reasonable, and market prices for same;

      c.      Knowingly misrepresenting that the "forced placed" policies of insurance were "necessary";

      d.      Knowingly purchasing replacement policies of hazard insurance which are inferior to the replaced insurance, and at greater charges than the superior coverage.

      e.      Knowingly imposing force placed insurance when it knew or should have known that the victims, plaintiffs, were covered by homeowners' purchased insurance;

      f.      Knowingly charging "excessive and unreasonable" charges for force placed insurance;

      g.      Filing false documents with the respective Courts;

      h.      Failing to disclose that its purchase of force placed insurance inured to the its benefit by virtue of the commissions on premiums received by it for the purchase, and the other consideration therefor, specifically, but not limited to, utilizing charges for force placed insurance in consideration for oversight of the entire mortgage portfolio by the insurer;

      i.      Failing to disclose the *de minimus* insurance coverage attendant to the force placed policies; and

j.    "Engaging in other fraudulent conduct creating a likelihood of confusion or of misunderstanding"[3]

k.    Engaging in any other conduct deemed to constitute unfair trade practices, unfair methods of competition, or other unfair or deceptive acts or practices.

169.    HSBC, therefore, has engaged in unfair trade practices to plaintiffs.

170.    Moss, therefore, has engaged in unfair trade practices to plaintiffs[4].

171.    The facts constituting the basis for these unfair trade practices are as set forth above. Defendants have engaged in other activity further exacerbating its participation in unfair trade practices.

171.    These unfair trade practices in which Defendants have participated are all intertwined with the factors constituting misrepresentation:

a.    By acts, Defendants have made representations of a material nature that Defendants knew (or should have known) were misrepresentations.  These misrepresentations were made to the plaintiffs, *et al.*

b.    These misrepresentations were made with the intent to cause Plaintiffs, *et al.*, to reasonably rely to their detriment, which occurred, causing Plaintiffs to suffer damage, including, but not limited to, owing sums or paying sums of money to Defendants believing that the payments were for charges permitted by law and/or contract.

c.    These misrepresentations were made with the intent to cause Plaintiffs, *et al.*, to reasonably rely to their detriment, which occurred, causing Plaintiffs to suffer damage, including,

---

[3] Quoted or paraphrased from:  73 P.S. §201-2(4)(xvii).

[4] Furthermore, it is believed and therefore averred that Moss is not licensed or authorized to practice law in the Commonwealth of Pennsylvania, the Eastern District of Pennsylvania or the United States Bankruptcy Court in the Eastern District of Pennsylvania, or many other jurisdictions in which authority and/or admission and/or licensure to practice is a requirement.

but not limited to, not contesting the existence of these illegal charges for the lack of knowledge thereof.

      d.     Because of Defendants' misrepresentations in the statements and proofs of claim, and Plaintiffs' reasonable reliance thereon, Plaintiffs suffered damages reflected in the payment to Defendant of sums for which Plaintiffs had no liability or responsibility.

      e.     The representations made by Defendants were false, constituting misrepresentations.

      f.     These misrepresentations were manifested both by mischaracterizations in writings and by silence.

      g.     Plaintiffs reasonably relied upon these misrepresentations to their detriment.

      h.     As a result of this reliance, Plaintiffs have suffered additional damage, including attorney's fees and costs.

172.    It is believed and therefore averred that the misrepresentations were intentional, or at least so recklessly made as to constitute intentional fraudulent statements.

173.    Defendants have, therefore, engaged in unfair trade practices to consumers. As such, Defendants are in violation of or has violated Pennsylvania Statutes 73 P.S. § 201-1, *et seq.*, and 73 P.S. § 2270.4 and 73 P.S. § 2270.5.

174.    Defendants have, therefore, engaged in misrepresentation and fraudulent misrepresentation, entitling Plaintiffs to damages as provided by statute and common law.

WHERFORE, Plaintiffs pray this Honorable Court grant appropriate damages, including, but not limited to

      A.     Certifying the Class described, and appointing Plaintiffs as representative of the Class, and the undersigned as Class counsel;

B.    Preliminarily and thereafter permanently enjoining HSBC and Moss from engaging in the acts described herein;

C.    Requiring that HSBC and Moss pay compensatory damages, statutory damages; disgorgement by HSBC of any sums collected, attorney's fees and experts' fees and other litigation expenses; and

D.    Granting such other relief as the Court may deem appropriate.

Respectfully submitted:

Stuart A. Eisenberg
Attorney I.D. 12433
Carol B. McCullough
Attorney I.D. 56424
MCCULLOUGH EISENBERG, LLC
Suite 201
530 West Street Road
Warminster, PA 18974
1-215-957-6411
Attorney for Plaintiffs